UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MELISSA BURFORD,

    Plaintiff,

v.

MCDONALD'S CORPORATION,
CARL FIELD, TIMOTHY MICHAUD,
And RONALD FEDOR,

    Defendants.

C.A. No. 3:02-CV-1738 MRK



## DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants McDonald's Corporation ("McDonald's"), Carl Field ("Field"),

Timothy Michaud ("Michaud") and Ronald Fedor ("Fedor") submit this Local Rule

56(a)(1) Statement in support of their Motion for Summary Judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure.

### McDonald's Store Management

1.   McDonald's restaurants employ four levels of store managers, the first

three of which represent different levels of training to become a store manager.  The

lowest level is a swing or shift manager.  A swing manager is responsible for

learning and understanding McDonald's policies and procedures in order to prepare

for managing shifts in a McDonald's restaurant.  Responsibilities include but are

not limited to:  (1) learning the basics of restaurant operations through on-site

training, area management and floor management; (2) gaining experience with a

team and maintaining customer satisfaction; and (3) developing an understanding

of basic supervision, human relations and interpersonal communication and follow-

up skills.  See Affidavit of Steven Goulart, ("Goulart Aff.") at ¶ 2, attached hereto as

Exhibit 1.

2.    The next level of management is second assistant manager.  A second

assistant manager is continuing the process of training to manage a restaurant.  An

employee in that position is responsible for managing people, products and

equipment to execute outstanding quality service, cleanliness and value on all

assigned shifts.  The responsibilities include but are not limited to: (1) developing

and training current employees; (2) maintaining critical standards for product

quality, service speed and quality, cleanliness and sanitation; (3) managing shifts

and/or areas without supervision; (4) ensuring all safety, sanitation and security

procedures are executed; (5) controlling food components, labor, waste and cash

while managing shifts and/or areas; and (6) completing all assigned shift

paperwork. See Goulart Aff. at ¶3.

3.    The next level of management is the first assistant manager.  A first

assistant manager is continuing the process of training to manage a restaurant, and

is responsible for assisting the restaurant manager in executing virtually all aspects

of the restaurant operations.  Responsibilities include but are not limited to: (1)

demonstrating and reinforcing the leadership behaviors and basic people standards

necessary to gain commitment from crew and other shift managers; (2) recruiting,

staffing, scheduling and retaining employees; (3) managing the development and

training of crew and shift management employees; (4) building sales and controlling cost to deliver optimum business results for all areas of accountability; (5) maintaining critical standards for product quality, service speed and quality, cleanliness and sanitation; and (6) controlling assigned profit and loss line items. See Goulart Aff. at ¶ 4.

4.    Finally, the restaurant manager is responsible for the entire operation of a single McDonald's restaurant, including: (1) developing and training assistant managers; (2) measuring external customer satisfaction and executing plans to increase brand loyalty; (3) implementing and conducting in-restaurant new products and procedures; (4) ensuring an execution of all security for the safety and maintenance of the restaurant; (5) projecting and controlling accurate profit and loss line items; and (6) administering all in-restaurant records and procedures including benefits, payroll, inventory, security and employee personal files. See Goulart Aff. at ¶ 5.

5.    An operations manager is responsible for all restaurants in a certain geographic area.  Goulart Aff. at ¶ 6.

Benefits

6.    Full-time employees are entitled to ten days paid vacation after working at McDonald's for one year.  This applies to, among others, swing managers and second assistant managers.  Goulart Aff. at ¶7.

7.    Restaurant management employees who are over 21 years old and work at least 1,000 hours per year are eligible to contribute to the company's 401(k). The company will match the employee's contribution after one year of service. This applies to all restaurant management employees, including swing managers and second assistant managers. Goulart Aff. at ¶ 8.

8.    Employees who are over 21 years old and have worked at McDonald's for one year (in which they worked at least 1,000 hours) are eligible to receive ESOP and Profit Sharing contributions. This applies to all restaurant employees, including swing managers and second assistant managers. Goulart Aff. at ¶ 9.

### The Individual Defendants

9.    At all relevant times, defendant Ron Fedor was the operations manager with responsibility for the McDonald's store on Long Hill Road in Groton, Connecticut. He was an employee of McDonald's between November 1992 and November 2001. During his employment there were never any allegations that he sexually harassed any employee. It is McDonald's policy and practice that management employees like Fedor sign the sexual harassment policy only after completing sexual harassment training for managers. Fedor signed the policy on October 18, 1994. Goulart Aff. at ¶10.

10.    At all relevant times, defendant Timothy Michaud was a McDonald's restaurant manager. He worked for McDonald's between 1990 and 2003. Mr. Michaud was never the subject of a complaint of sexual harassment while in the

employ of McDonald's.  It is McDonald's policy and practice that management

employees like Michaud sign the sexual harassment policy only after completing

sexual harassment training for managers.  Michaud signed the policy on November

10, 1997. Michaud was on sabbatical between April 2, 2001 and June 11, 2001.

Goulart Aff. at ¶11.

11.    At all relevant times, Carl Field was a McDonald's restaurant

manager.  Mr. Field was employed by McDonald's between May 1996 and

September 2001.  Other than the allegations raised by Melissa Burford, Mr. Field

has never been the subject of a complaint of sexual harassment while employed by

McDonald's  It is McDonald's policy and practice that management employees like

Field sign the sexual harassment policy only after completing sexual harassment

training for managers.  Field signed the policy on May 16, 1996. Goulart Aff. at ¶12.

12.    Carl Field was promoted to the position of store manager effective

February 27, 2000.  In or about March 2001 he was transferred to the Groton store

as manager.  The manager of that store, Tim Michaud, was going on a ten week

sabbatical, and Field was to manage the store in his absence.  Field and Michaud

were in the store together for a period of time in order to smooth the transition.

Michaud went on sabbatical as of April 2, 2001.  Goulart Aff. at ¶13.

13.    Michaud and Field both held the position of store manager in the

Groton store.  Transcript of the Deposition of Carl Field, ("Field Dep. Tr.") at pp. 18-

19; Transcript of the Deposition of Timothy Michaud, ("Michaud Dep. Tr.") at p. 25.

(Cited portions of the Field deposition are attached hereto as Exhibit 2, and cited portions of the Michaud deposition are attached hereto as Exhibit 3). During the time that they were both working in the Groton store, Michaud exercised no control over Field's employment.   He could not discipline or terminate Field for alleged harassment. Goulart Aff. at ¶14.

### McDonald's Sexual Harassment Policy

14.    McDonald's has a comprehensive sexual harassment policy.   It is McDonald's policy and practice that new employees like Burford sign the policy only after receiving sexual harassment training for employees.  Burford signed her copy of the policy on November 28, 2000.  Pursuant to the policy, "any employee that feels subjected to discrimination or harassment should immediately report it to their human resources representative.  As an alternative to human resources, employees may report their complaint to their regional manager or officer in charge."  Goulart Aff., ¶16.

15.    During the relevant period, a sign was posted in the crew room of the Groton store stating that McDonald's does not tolerate sexual harassment.  Goulart Aff., ¶17.

16.    During the relevant period each employee's paycheck stub included a reference to the McDonald's Service Center and the telephone number of that center to remind employees that they can call the center for assistance. Goulart Aff., ¶18.

<u>Plaintiff</u>

17.    Melissa Burford was hired as a crew member at the Groton store effective November 20, 2000. She was promoted to the position of swing manager effective February 19, 2001. The Groton store's time records indicate that Burford generally opened the store on Monday through Friday, working from 5:00 a.m. until 1:00 p.m. Goulart Aff. at ¶15. Prior to working at McDonald's, plaintiff worked for six months as an exotic dancer at a gentlemen's club who, according to plaintiff, stripped down to pasties and a G-string. She did not find the nature of the work offensive. Transcript of the Deposition of Melissa Burford ("Burford Dep. Tr.") at pp. 25-35 (Cited portions of the Burford deposition transcript are attached hereto as Exhibit 4).

<u>Allegations of Sexual Harassment</u>

18.    Burford alleges that she experienced the following alleged sexual harassment:

> (a) Field rubbed his body up against hers telling her that she had "a sweet little ass" when they both happened to be in the stock room. Burford Dep. Tr. at p.92;

> (b) Field made comments about her tattoo on her chest at managers' meetings, every other week. Burford Dep. Tr., p. 93. He would also say at those meetings that he wanted to look down her shirt. Burford Dep.

Tr., p. 98. Burford admits, however, that "a little bit of my tattoo sticks out" in outfits that she wore. Burford Dep. Tr., p. 93. Managers' meetings took place every Tuesday afternoon for one hour. Affidavit of Carl Field ("Field Aff."), at ¶5, attached hereto as Exhibit 5.

(c) Field rubbed Burford's shoulders once, saying "you look tense and tight like you need a massage," she told him to stop and he never did it again. Burford Dep. Tr., pp. 93-94;

(d) On Memorial Day 2001, Field came in to the store and saw that employees Tammy Sabados, Louise Sheriff and Burford all had red hair. He "made the comment that he was going to dye all of his hair red, he said, including down there. Then he looked at me and said, 'that will make us hotter in bed together.'" Burford Dep. Tr., pp. 94-95;

19.    These incidents occurred over an approximately two week period between May 28, 2001 and June 11, 2001: Burford stated that "[M]y problems with Carl began after I gave my two weeks notice. Carl changed after this happened. I gave notice due to lax procedures, short-handed shifts and no actions by the managers to correct." (Emphasis added.) See Statement of Melissa Burford, dated July 18, 2001, a copy of which is attached to the Goulart Affidavit as Exhibit K. Ms. Burford gave notice that she would quit her job in May 2001. It was at the same time that another manager, Julita Baumgardner, quit. Burford Dep. Tr., at p. 75. Baumgardner quit on or about May 12, 2001. Goulart Aff., at ¶19. Burford

testified that there were no incidents of sexual harassment for approximately three weeks after she gave notice. Burford Dep. Tr., p. 88.

20.    During that two week period, Burford and Field were both in the store for a total of 15.5 hours, including scheduled time as well as a one hour managers' meeting on June 5. Field Aff., ¶¶4,5.

21.    According to Burford, the incidents set forth in paragraph 18, above, comprise all the alleged sexual harassment that Field directed at her between the end of May 2001 and June 11, 2001, when Michaud came back. She states that the sexual harassment ceased after Michaud returned, on June 11. Burford Dep. Tr., pp. 92, 93, 94, 98, 99-101. Goulart Aff., ¶11.

Other Allegations

22.    Burford alleges earlier incidents with Field prior to the time when Burford gave notice. However, she stated that her giving notice had nothing to do with the incidents, and that her problems with Field began only after she gave notice.

23.    Burford gave notice because "I was tired of picking up the slack for everybody else. I was coming in in the morning and things weren't being done at night for close, things were being left on and that they were leaving, like coffee pots on. ...nobody was doing the food safety book then, they were saying, okay, even though my shift was done at 11, 10:30, 11, during transition that the next person

who was there it was there job to do the food safety book, they were telling me, no, I had to start doing that. ...it was a bunch of that kind of stuff that was going on and I felt, why do I have to take the slack for everybody else?"  Burford Dep. Tr., pp.74-75.

24.     Burford did not give notice because of any personal issues with Field: "I mean, he had already done some of the things to me at that time, but it had nothing to do with that, no." Burford Dep. Tr., p.80.  See also Statement of Melissa Burford, dated July 18, 2001, a copy of which is attached to the Goulart Affidavit as Exhibit K: "My problems with Carl began after I gave my two weeks notice. Carl changed after this happened. I gave notice due to lax procedures, short-handed shifts and no actions by the managers to correct." (Emphasis added.)

25.     Burford decided to stay at McDonald's after a discussion with Field. "He told me things would be better, that, you know, he couldn't afford to lose me, that I was one of the best managers there and that they needed me. And I told him, I said, as long as everything quits, you know, and everybody was doing their job, and not everything was being put on my shoulders, that because I was coming into a store that was pretty much trashed every morning and they weren't even punishing this manager for not doing his job." Burford Dep. Tr., p. 90.

26.     The "pre-notice" incidents are as follows:

(a)  Field stuck his tongue out at Burford, and she stuck her tongue out at him. Then Field came up to Burford and said, "that he knew

how to use his tongue, that he wanted to find out how I used my tongue, and that he was going to find that out". Burford Dep. Tr. at p.80. This occurred in April or May 2001. Field made the tongue comment on one occasion. Burford Dep. Tr., pp. 87, 88.

(b) Field came up to Burford and tapped her "on the butt" on several occasions. Burford Dep. Tr., at pp.84-85.

(c) Field said "you can kiss my ass" to Burford, and said that it would not take long to kiss her ass. Burford Dep. Tr., at pp. 86, 88.

27.    Burford experienced "the tongue incident, the patting on the rear, and the kiss my ass comments" from Field prior to her giving notice. Burford Dep. Tr., p. 88-89.

Michaud Returns

28.    After Michaud returned, Burford claims that Michaud and Field would make jokes about her. Burford Dep. Tr., p. 100. "Just those rude comments. They were not very friendly to me. ... If I would make one mistake they were very hard on me. It was stuff like that." Burford Dep. Tr., p. 101.

Second Assistant Manager

29.    Field asked Burford in May 2001 whether she was interested in becoming a second assistant manager. Burford Dep. Tr., p. 54.

30.     According to Burford, there could be three second assistant managers in the Groton store. Burford Dep. Tr., p. 58. As of May 2001, Vernon Brown and Louise Sheriff were both second assistants. However, Burford stated that Sheriff was "moving up to first assistant" at the time. Burford Dep. Tr., p. 58.

31.     Field told Burford that the position of second assistant manager required open availability, i.e. complete time flexibility as to her ability to work. As a result, Burford states that she checked into daycare options to see if she would be able to take the position. She subsequently told Field that she had located daycare for her daughter. Burford Dep. Tr., p. 57. However, she did not tell him that there was an exact date on which the daycare was available and she could assume the position as second assistant manager. Burford Dep. Tr., p. 108.

32.     Burford states that Field told her that she was "in the process of becoming the second assistant." Burford Dep. Tr., p. 106 (emphasis added). He also told her at the time that she "was going to be the second assistant manger." Burford Dep. Tr., p. 107 (emphasis added).

33.     Field was transferred from Groton to be the manager of the Niantic, Connecticut store, effective July 15, 2001. Goulart Aff., ¶20.

34.     Timothy Meredith was promoted to the position of second assistant manager in the Groton store effective July 16, 2001. Goulart Aff., ¶21.

35.    No one in a position of authority at McDonald's ever told Burford that she would not become a second assistant manager because Meredith had become one.

### Burford Complains, and McDonald's Responds

36.    Burford first called the McDonald's Service Center to complain of sexual harassment on July 13, 2001. See Affidavit of Dan Hoppe ("Hoppe Aff."), at ¶5, attached hereto as Exhibit 6.   Burford also called the Service Center twice on July 17, 2001 to complain that she was "verbally offered" the position of assistant manager but that the position was given to someone else, and that she was being sexually harassed by the acting store manager Carl Field. Hoppe Aff. at ¶¶6,7. Hoppe called Steve Goulart to investigate Burford's complaints. Hoppe Aff. at ¶7. There is no record that she called the Service Center on any other occasions. Hoppe Aff. at ¶4. Similarly, Burford never complained to the regional human resources representatives prior to July 2001.   Goulart Aff., ¶23.

37.    On July 17, 2001, Burford came into the store and argued with Meredith because he had been promoted to second assistant manager.  Burford Dep. Tr., p. 121.

38.    When Michaud came in on July 17, he told Burford that she had no right to argue with Meredith or to question Michaud regarding giving him a position as a second assistant manager, and told her to go home. Burford Dep. Tr., pp. 121-122.

39.   That same day, when she got home, Burford called Fedor, the operations manager. "I told him that Timmy [Meredith] had come in with an attitude and told me it was his shift. I said I was only going by what was on the schedule. You are supposed to follow the schedules, that's what I was supposed to do. I told him that Tim [Michaud] took me outside and was yelling at me, telling me I had no right to ask Tim [Meredith] if he gave him the second assistant position, and that Tim [Michaud] told me I was to go home. I wanted to let him know that I was being sent home." Burford Dep. Tr., p.123.

40.   That afternoon Burford received a telephone call from Steven Goulart, a human resource representative for McDonald's. They talked and arranged a time to meet in person. Burford Dep. Tr., pp. 126-127.

41.   On July 18, Burford talked again with Fedor, who told her that she was being transferred to the Waterford, Connecticut McDonald's store at her request. Burford Dep. Tr., p. 125. Burford was transferred to the Waterford store, effective July 23, 2001, as a swing manager. Goulart Aff., ¶26.

42.   On July 18, Burford met with Goulart, who told her that he would conduct an investigation into all of her complaints. She signed a statement, dated July 18, setting forth her complaints. Burford Dep. Tr., p. 83; Goulart Aff., ¶25.

43.   Goulart conducted an investigation which consisted of interviews of several employees identified by Burford, as well as Field and Fedor. The interviewed employees included Tammy Sabados, Vernon Brown, Grant Polippo,

Tonya Glassco, and Louise Sheriff.  Transcript of the Deposition of Steven Goulart ("Goulart Dep. Tr."), p. 28.

44.    In late August 2001, Goulart, in consultation with McDonald's in-house counsel, prepared a "final written warning" to deliver to Field with regard to the results of the investigation.  Goulart Dep. Tr., at pp. 39-40; Goulart Aff., ¶28.

45.    Field resigned from McDonald's to pursue another position effective September 28, 2001.  He gave his notice two weeks prior.  Field Dep. Tr., p. 43; Goulart Aff., ¶29.

46.    Field was not given the final written warning due to his resignation from McDonald's.  Goulart Dep. Tr., pp. 42-43.

Waterford and Resignation

47.    According to Burford, the atmosphere at the Waterford store was "nice."  Burford Dep. Tr., p. 144.  Nevertheless, she resigned effective August 9, 2001.  Burford Dep. Tr., pp. 145-146; Goulart Aff., ¶27.  Theresa Rogers, the Waterford store manager, told Burford that "she was sorry to see me leave because I was a good worker."  Burford Dep. Tr., p. 147.

Alleged Employment Actions

48.    Burford alleges in her complaint that she was punished for complaining about sexual harassment when she was denied a promotion to second

assistant manager, was denied one week's paid vacation, and her hours were reduced. As to the second assistant manager position, see ¶¶29-35, above.

49.    Burford understood that she was eligible for paid vacation in her first year as swing manager. However, she also understood that if she took vacation in that first year and was paid for it, and was terminated within that first year, her last paycheck would be retained by McDonald's to pay for that week's vacation. Therefore, she recognizes that in effect she was not eligible for paid vacation. Burford Dep. Tr., pp. 49-50. Moreover, in any event, swing managers are not entitled to paid vacation in their first year in the position. Goulart Aff., ¶7.

50.    Burford's hours were reduced by Theresa Rogers at the Waterford store: "some days I didn't even work the whole 8-4 because she didn't need me everyday for those hours, because they had too many people." Burford Dep. Tr., p. 180. Burford had not told Rogers the details of what had happened at Groton. Burford Dep. Tr., pp. 145, 146.

DEFENDANTS, McDONALD'S
CORPORATION, CARL FIELD, TIMOTHY
MICHAUD, AND RONALD FEDOR,
By their Attorneys,
HOLLAND & KNIGHT LLP

Neal J. McNamara, Esquire (FBN 19349)
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903
(401) 751-8500
(401) 553-6850 (Facsimile)
neal.mcnamara@hklaw.com

**_LOCAL OFFICE FOR PURPOSES OF
RULE 2(C):_**

Rodger W. Lehr, Jr., Esq.
Watsky Drive # 3
Stonington, CT  06378
Juris No. 07208

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Local Rule
56(a)(1) Statement was forwarded via first class mail, postage pre-paid, this 21st
day of November, 2003 to:

Peter J. Bartinik, Jr.
Bartinik, Gianacoplos, Bartinik, Bartinik & Grater, P.C.
100 Fort Hill Road
P.O. Box 942
Groton, CT 06340-0942

# 1356827_v1