Conversely, it is instructive to note what circumstances will lead a court to deny a motion for summary judgment in a hostile environment case. For example, in <u>Dobrich v. General Dynamics Corp.</u>, 40 F. Supp.2d 90 (D. Conn. 1999), the court noted that "[H]ad the plaintiff's allegations ... included only occasional derogatory comments, we would find these objectively insufficient under the circumstances to meet the legal requirements for a hostile environment claim under Title VII." <u>Id.</u> at 99. However, in that case plaintiff testified "that there were a number of other significant acts of vandalism, physical touchings, and vulgar acts of a sexual nature directed toward her, as well as a number of sexually offensive drawings and objects displayed in the workplace that may or may not have been directed at her." <u>Id.</u> Therefore, the court denied summary judgment. <u>See</u> also <u>Kolp v. New York State Office of Mental Health</u>, 15 F. Supp.2d 323, 327 (W.D.N.Y. 1998)(over the course of several years plaintiff "suffered insults, derogatory comments and offensive pranks because of her sex."); <u>Mitchell v. FAB Industries, Inc.</u>, 990 F. Supp. 285, 292 (S.D.N.Y. 1998)(over the course of four months another employee repeatedly said "Jesus, Jesus, fuck you, kiss my ass" to the plaintiff, repeatedly cursed at her using the word fuck, called her a bitch and threatened to pull her curls out, and called her a bastard and shook his buttocks in her face.")

Here, Burford's allegations fail to establish a hostile work environment because the picture that she paints is not one of a severe and pervasive hostile environment. Indeed, Field never invited Burford to have sex with him or even to

---

including one made while harasser had his arm around the plaintiff and was peering down her dress).

# 1353482_v3

- 16 -

go out on a date with him; he made no threats; he did not expose himself or show her dirty pictures; in fact, he never said anything or made any comments that could not have been repeated on primetime network television. See Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995). In addition, the alleged harassment, the importance of which Burford did not discount, occurred over only a two week period out of the eight months that plaintiff spent at the Groton store. Accordingly, Field's actions while perhaps boorish and inappropriate at worst, do not rise to the level of severity and frequency sufficient to alter the terms and conditions of Burford's employment. Burford's claims of sexual harassment, therefore, must be dismissed.

**B.    McDonald's Is Entitled To Summary Judgment Upon The Application Of Its Affirmative Defenses.**

Assuming Burford could state a claim for hostile environment sexual harassment, which she cannot, McDonald's may still avoid liability by showing that 1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and 2) that Burford failed to take advantage of any preventive or corrective opportunities provided by McDonald's. Ellerth, 324 U.S. at 764; Faragher, 524 U.S. at 807. The defense examines the reasonableness of the conduct of both he employer and the employee. Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2nd Cir. 2001). This defense is available to McDonald's because Burford suffered no tangible employment action. Id. ("an affirmative defense is available when the employer does not take any tangible employment action in connection with the harassment."); Wilburn v. Fleet Financial Group, Inc., 170 F.Supp.2d 219, 227 (D.

# 1353482_v3

- 17 -

Conn. 2001) (recognizing that employer may assert defense when "a hostile work environment...does not culminate in a tangible employment action.")(citing Ellerth, 324 U.S. at 764; Faragher, 524 U.S. at 807.).

### 1. Burford Suffered No Tangible Employment Action.

The Supreme Court has defined a "tangible employment action" as a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indust., Inc. v. Ellerth, 324 U.S. 742, 762 (1998); Morris v. Lindau, 196 F. 3d 102, 110 (2nd Cir. 1999) (defining adverse action as "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"); see also Smart v. Ball State Univ., 89 F. 3d 439, 441 (7th Cir. 1996) (recognizing that "not everything that makes an employee unhappy is an actionable adverse action"); Flaherty v. Gas Research Inst., 31 F. 3d 451, 456 (7th Cir. 1994) (recognizing that a "bruised ego" is not enough).

Burford claims that she was denied a promotion to a second assistant manager's position as a result of her complaint of sexual harassment, and that another employee, Tim Meredith received a position that had been promised to her.[7] See Second Amended Complaint ¶ 24(a). In order to establish a failure to promote, plaintiff must demonstrate that her application for promotion was actually denied.

---

[7] Burford also alleges that she was denied a one week paid vacation as a result of the alleged harassment. See Second Amended Complaint ¶ 24 (b). This argument should be disregarded as Burford admits that she was only eligible for one week paid vacation after one year on the job. Statement, ¶49. It is undisputed that she resigned prior to reaching that milestone.

# 1353482_v3

Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998); Brown v. County of Oneida, 2000 WL 1499343 *12 (N.D.N.Y.).

Burford's claim is based upon the assumption that Meredith's receiving the promotion automatically meant that she would not receive a similar promotion. Statement, ¶¶29-35. According to Burford, the store could have up to three second assistant managers. At the time Meredith was promoted there were two other second assistants in the Groton store—Vern Brown and Louise Sheriff. However, according to Burford, Sheriff was about to become a first assistant manager. Statement, ¶30. Therefore, there was yet another available second assistant manager position, even after Meredith was promoted. Thus, Meredith's promotion had no bearing whatsoever on Burford's bid for the position. Significantly, there is no evidence that anyone in a position of authority ever told Burford that Meredith's promotion sounded the death knell on her prospects for receiving the same promotion, in other words, there is no evidence that she was ever denied the promotion.[8] Burford's unsubstantiated assumption that she was denied a promotion to second assistant manager is completely insufficient to establish that she suffered a tangible employment action.

Moreover, Burford admits that one of the essential qualifications of the second assistant position is "open availability." Statement, ¶31. "Open availability" means that the employee is available to work any shift on any day of the week

---

[8] In Paragraph 21 of her Second Amended Complaint, Burford alleges that she was constructively discharged from McDonald's as a result of Field's conduct. This, too, is not evidence of a tangible employment action because the Second Circuit has held that "a constructive discharge does not constitute a tangible employment action." Mack v. Otis Elevator Company, 326 F.3d 116, 128 n.7 (2nd Cir 2003) (quoting Caridad v. Metro-North Commuter RR, 191 F.3d 283, 294 (2nd Cir. 1999)); Wilburn v. Fleet Financial Group, Inc., 170 F. Supp. 2d 219, 238 n. 49 (D. Conn. 2001).

# 1353482_v3

- 19 -

including certain holidays. Statement, ¶31. Burford admits that she never reported back to Field with an exact day when she would have settled her childcare arrangements in order to meet the open availability requirement. Statement, ¶31. Burford, therefore, suffered no tangible employment action.

### 2. Once On Notice McDonald's Took Prompt and Appropriate Action.

It is undisputed that McDonald's had in place a sexual harassment policy that was distributed to all its employees, which provided several avenues for reporting allegations of sexual harassment. Pursuant to the policy, "any employee that feels subjected to discrimination or harassment should immediately report it to their human resources representative. As an alternative to human resources, employees may report their complaint to their regional manager or officer in charge." Statement, ¶14.

In addition, McDonald's Zero Tolerance Sexual Harassment Policy is posted in every store, the "800" hotline number to the Human Resources Service Center is printed on every employee paycheck; and each employee is given a copy of McDonald's Zero Tolerance Sexual Harassment Policy upon hiring. Statement, ¶¶14-16. The existence of the sexual harassment policy and the efforts that McDonald's took to publicize it, as well as the various places that employee could bring their complaints "is an important consideration in determining whether the employer has satisfied the first prong of this defense." Caridad, 191 F.3d at 295. "An employer need not prove that it prevented harassment in order to demonstrate that it exercised reasonable care in preventing and correcting it." Id. Rather, an

# 1353482_v3

- 20 -

employer is required merely to demonstrate that it acted reasonably to "prevent and correct sexually harassing behavior". Id.; DiStasio v. Perkin Elmer Corp., 157 F.3d 55, 65, 2nd Cir. 1998) ("liability will not attach unless the company failed to take reasonable steps to eliminate the harassment.").

Due to the existence of the sexual harassment policy and the complaint procedures, McDonald's was entitled to rely upon Burford to bring any problems that she had to its attention. Faragher, 524 U.S. at 788; Leopold, 239 F.3d at 245; Wilburn, 170 F.Supp.2d at 227. The Supreme Court held in Faragher that an employee who has been the victim of harassment has a duty to complain that follows from the duty to avoid and mitigate harms. That duty applies whether the alleged harasser is a supervisor or co-worker:

> An employer may. . . have provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment available to the employee without undue risk or expense. If the employee unreasonably failed to avail herself of the employer's preventative or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided.

Faragher, 524 U.S. at 806-07.

In Leopold v. Baccarat, Inc., 239 F.3d 243, the Second Circuit recently affirmed summary judgment on behalf of an employer based on the application of this Faragher defense. In that case, the Court found the employee's conduct to be unreasonable in failing to report her complaints of sexual harassment. Id. at 245. Moreover, the plaintiff failed to support her claim that she had a credible fear which prevented her from reporting. The Court found her claim that she would have been

# 1353482_v3

fired for speaking up without any support insufficient, stating that "such conclusory assertions fail as a matter of law to constitute sufficient evidence that her fear was 'credible'—that 'her complaint would not be taken seriously or she would suffer some adverse employment action as a result of filing a complaint seriously.'" Id. (quoting Caridad, 191 F. 3d at 295.).

Here, once Human Resources received a complaint from Burford, it immediately met with her, initiated an investigation, and she was transferred to the store that she requested. As soon as McDonald's received notice of her complaint, it took prompt remedial action including an investigation initiated by Steve Goulart, a McDonald's human resources representative. First, Goulart spoke to Burford by telephone, then in person, and gave a written statement which she signed. Statement, ¶¶40-42. Then Goulart interviewed Field and witnesses identified by Burford including: Grant Polippo, Vern Brown, Louise Sheriff, Tammy Sabados, and Tonya Glasco. Statement, ¶43. After consultation with Fedor and McDonald's in-house legal counsel, Goulart drafted a final written warning to be given to Field.[9] Statement, ¶44. Burford's request for a transfer to another store was immediately granted. Meanwhile, Field had already been transferred to another store prior to receipt of Burford's complaint. Statement, ¶33. McDonald's, therefore, acted reasonably under the circumstances.

---

[9] Field actually left McDonald's for another job before the warning could be issued to him. Statement, ¶¶45-46.

# 1353482_v3

### III. Burford's Tort Claims Against McDonald's Must Fail As A Matter Of Law Because She Cannot State a Basis for Vicarious Liability Against McDonald's and She Has Failed To Produce Evidence To Support the Elements of Her Claims.

Burford has asserted tort claims for intentional infliction of emotional distress, sexual assault, and negligent training and supervision against McDonald's as a result of Field's alleged misconduct. Burford cannot support any of her tort claims with the requisite proof to meet the elements. Moreover, her claims for intentional infliction of emotional distress and sexual assault must fail because Burford cannot show that Field, to the extent these incidents occurred, was acting within the scope of his employment, an essential element for holding McDonald's liable on those claims on a vicarious liability theory.

#### A. Burford Has Failed to Produce Sufficient Evidence to Support Her Claim for Intentional Infliction of Emotional Distress.

Burford cannot provide the requisite proof to support her claim for intentional infliction of emotional distress. Under Connecticut law, the elements of the tort of intentional infliction of emotional distress are: (1) the defendant intended or knew that emotional distress would likely result from its conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused Burford emotional distress; and (4) that Burford's distress was severe. See Abate, 130 F. Supp. 2d at 348; Appleton v. Board of Educ. of Stonington, 757 A.2d 1059 (Conn. 2000).

Burford has not met her burden to establish that Field's conduct was "extreme and outrageous" according to the definition which Connecticut courts have borrowed from the Restatement (Second) of Torts, §46, CMT. D (1965)-- "liability

# 1353482_v3

has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." See De Laurentis v. City of New Haven, 597 A.2d 807, 828 (Conn. 1991); Petyan v. Ellis, 510 A.2d 1337, 1341 (Conn. 1986). "Whether a defendant's conduct rises to the level of being 'extreme and outrageous' is a question to be determined by the court in the first instance." Abate, 130 F. Supp. 2d at 348; Appleton, 757 A.2d at 1062. Only when the court determines that reasonable minds could disagree does the issue become one for the jury. See Abate, 130 F. Supp. 2d at 348.

Courts applying the standard set forth in the Restatement have routinely held that the types of conduct alleged in a typical sexual harassment case, like Burford's, do not suffice to sustain a claim for intentional infliction of emotional distress. See Abate, 130 F. Supp. 2d at 348 (plaintiff's claim for intentional infliction of emotional distress did not rise to the level of intentional extreme and outrageous conduct where plaintiff was subjected to "highly offensive and unwelcome sexual comments to and about plaintiff" in addition to "highly offensive and unwelcome touchings" including pinching plaintiff's cheeks, holding plaintiff by his mid-section, grabbing plaintiff by his sides, and touching plaintiff with his genital area); Hoy v. Angelone, 720 A.2d 745, 754-55 (Conn. 1998) (noting that recovery for this tort is reserved "for only the most clearly desperate and ultra extreme conduct," and holding that although the conduct in a typical sexual

harassment case may be "highly offensive and unacceptable" such facts do not rise to the level to allow recovery under "this most limited of torts").

Furthermore, Burford cannot state a claim against McDonald's based on McDonald's alleged failure to protect her from the alleged sexual harassment. In Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000), the court dismissed a similar claim of intentional infliction of emotional distress against a former employer. The Court held that the plaintiff's allegations that her employer "refused to take action to protect plaintiff and other women from sexual harassment," "refused to take action to protect plaintiff from [harassers] aggressive, offensive, and hostile conduct"; and "reprimanded plaintiff for asserting her rights to be free from sexual harassment, forcing plaintiff to resign her position a second time in retaliation for said exercise of her rights" did not allege conduct sufficiently extreme or outrageous to support a claim as a matter of law. Id.; see also New Town v. Shell Oil Co., 52 F. Supp. 2d 366, 375 (D. Conn. 1999) ("Defendant's alleged...failure to prevent Johnson's sexual harassment of plaintiff does not rise to the level of intentional, extreme and outrageous conduct that would support a claim of intentional infliction of emotional distress.").

Burford's allegations that Field made a few offhand comments, gave her a neck massage and "bumped" her behind, even if credited, fall far short of the very high threshold required to support a viable claim for intentional infliction of emotional distress. Therefore, Burford's claim for intentional infliction of emotional distress must be dismissed.

# 1353482_v3

**B.     Burford's Claim Of Sexual Assault Must Be Dismissed.**

The elements of the intentional tort of sexual assault are 1) a harmful or offensive contact with a person, 2) resulting from an act intended to cause the person to suffer such a contact. Perron v. Robert, 2002 WL 31538217 *2 (Conn. Sup. Ct. Nov. 1, 2002); Fernandez v. Standard Fire Ins. Co., 688 A.2d 349, 351, n.4 (Conn. App. 1997); Moen v. Baransky, 1997 WL 666763 (Conn. Super. Oct. 16, 1997). Black's Law Dictionary defines the tort of sexual assault as follows:

> Sexual assault: 1.  Sexual intercourse with another person without that person's consent.*  Several state statutes have abolished the crime of rape and replaced it with the offense of sexual assault.
>
> 2.     Offensive sexual contact with another person, exclusive of rape. Also termed indecent assault.

Black's Law Dictionary (7th Ed. 1999).   In a civil case for the intentional tort of sexual assault, the Connecticut Superior Court recently looked to a criminal statute for the definition of "sexual contact." The definition upon which that court relied is: "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." Perron, 2002 WL 31538217 *2.

Consequently, in order to meet this definition, the allegations must deal with severe, extreme sexual contact, such as rape or molestation. See Perron, 2002 WL 31538217at *2 (finding liability where "defendant engaged on numerous occasions in the sexual assault of the Plaintiff by his inappropriate kissing and touching of her when she was a child for the purpose of his own sexual gratification"); Fernandez, 688 A.2d at 350 (Conn. App.Ct. 1997) (recognizing liability in case of

# 1353482_v3

- 26 -

molestation including intercourse between a thirteen year-old plaintiff and adult defendant); Moen, 1997 WL 666763 at * 1 (molestation and incest).

Burford's claim must fail. Her allegations pale beside the facts of the above-referenced cases. First, her allegations that Field bumped or tapped her backside, rubbed his body against hers and that he rubbed her shoulders on one occasion are not sufficiently sexual or offensive to support a claim. Also, her allegations fail to show that Field acted with the requisite intentionality, i.e. she has offered no evidence to show that he touched her in "intimate parts" for his "own sexual gratification." See Perron, 2002 WL 31538217 at *2. Accordingly, Burford has failed to establish the elements of the intentional tort of sexual assault as a matter of law.

### C. Burford Cannot Show That Field Was Acting Within The Scope of His Employment When He Allegedly Harassed Her.

It is well-settled Connecticut law that in order to hold an employer liable for the intentional torts of its employee, the employee must have been acting within the scope of his employment and in furtherance of the employer's business. Larsen Chelsey Realty Co. v. Larsen, 656 A.2d 1009 (Conn. 1995); A-G Foods, Inc. v. Pepperidge Farm, Inc., 579 A.2d 69, 73 (Conn. 1990).[10]

The United States Supreme Court has held that "the general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." Ellerth, 324 U.S. at 757. Accordingly, Connecticut courts have consistently "held as a matter of law that when the tortfeasor - employee's activities with the alleged victim become sexual, the employee abandoned and ceased to further the employer's

---

[10] By making this argument, McDonald's in no way concedes that plaintiff's allegations of sexual harassment have any merit.

# 1353482_v3

- 27 -

interest." Reynolds v. Zizka, 1998 WL 123047, at *3 (Conn. Super. Ct. Mar. 5, 1998); see also Gutierrez v. Thorne, 537 A.2d 527, 530 (Conn. 1988) ("It is clear that [the tortfeasor employee] was not furthering the defendant's business interests when he sexually assaulted the plaintiff."); Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 348 (D. Conn. 2001); Murphy v. Burgess, 1997 WL 529610 (D. Conn. July 16, 1997) (dismissing claim for intentional infliction of emotional distress based on vicarious liability because sexual harassment "cannot be construed as furthering the employer's business interests" as a matter of law); Nutt v. Norwich Roman Catholic Diocese, 921 F. Supp. 66, 71 (D. Conn. 1995) ("sexually abusive conduct amounts to the abandonment of the church's business. As a matter of law, therefore, the alleged sexual abuse, even if true, cannot be said to further the defendant's business and, therefore, is outside of the scope of employment."). Therefore, the sexual nature of plaintiff's allegations compels the conclusion that McDonald's may not be held liable for the torts of intentional infliction of emotional distress and sexual assault.

In any event, to sustain a claim against an employer for the intentional wrongful conduct of its employees a plaintiff must provide more than a mere conclusory statement that the wrongdoer was acting within the course of his employment. See, e.g., Coupe v. East Hartford Bd. of Educ., 1998 WL 83230, at *3 (Conn. Super. Ct. Feb. 17, 1998) (dismissing complaint which "failed to allege any facts to support the conclusory allegations that [the wrongdoer] acted within the course of his employment" in sexually assaulting the plaintiff).

# 1353482_v3

Here, Burford offers no evidence that Field's alleged wrongdoing was within the scope of his employment. In fact, she only makes the conclusory allegation that "at all relevant times, Carl Field was an employee of the defendant McDonald's Corporation, and was acting within the scope of his employment." See Second Amended Complaint at ¶8. This is precisely the type of conclusory allegation which the Court in Coupe found to be insufficient to state a claim against an employer. Burford has failed to offer any evidence to show that Field was acting in furtherance of McDonald's business interests when he allegedly sexually harassed her. Therefore, Burford's claims for intentional infliction of emotional distress and sexual assault against McDonald's must be dismissed.

### D. Burford Cannot Prove Her Claim for Negligent Training and Supervision.

Burford alleges that McDonald's "negligently failed to supervise and train its manager Carl Field causing substantial harm to the plaintiff." Second Amended Complaint at ¶ 31. Although a plaintiff may sue an employer for negligent supervision of its employees, Gutierrez, 537 A.2d 527, the plaintiff must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. Abate, 130 F. Supp.2d at 344; Shanks v. Walker, 116 F. Supp.2d 311, 314 (D. Conn. 2000). An employer does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or should have known of the employee's propensity to engage in that type of tortious conduct. Abate, 130 F. Supp.2d at 344.

# 1353482_v3

- 29 -

Burford has merely alleged that "defendant negligently failed to supervise, discipline, and train its managers, Carl Field, causing substantial harm to the plaintiff." Second Amended Complaint ¶ 31. She has not even alleged that McDonald's had a duty to supervise Field, or that either knew or should have known that Field had a propensity to harass female employees. Moreover, Burford has not produced any evidence to support this claim. Indeed, McDonald's has not received any other complaints about Field's conduct. Statement, ¶11. Furthermore, McDonald's provided sexual harassment training to Field as it does with all of its managers. Therefore, Burford has failed to establish the requisite elements of the tort.

## CONCLUSION

For the foregoing reasons, McDonald's respectfully requests that this Court enter summary judgment on all count against it.

DEFENDANT,

McDONALD'S CORPORATION

By its Attorneys,

HOLLAND & KNIGHT LLP

Neal J. McNamara, Esquire (FBN 19349)
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903
(401) 751-8500
(401) 553-6850 (Facsimile)
neal.mcnamara@hklaw.com

# 1353482_v3

*LOCAL OFFICE FOR PURPOSES OF RULE 2(C):*

Rodger W. Lehr, Jr., Esq.
Watsky Drive # 3
Stonington, CT 06378
Juris No. 07208

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Memorandum was forwarded via first class mail, postage pre-paid, this 21st day of November, 2003 to:

Peter J. Bartinik, Jr.
Bartinik, Gianacoplos, Bartinik, Bartinik & Grater, P.C.
100 Fort Hill Road
P.O. Box 942
Groton, CT 06340-0942

*[signature]*

# 1353482_v3