UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Jan 5  12:32 AM '04

MELISSA BURFORD,

        Plaintiff,

v.

MCDONALD'S CORPORATION, CARL FIELD, TIMOTHY MICHAUD and RON FEDOR,

        Defendants.

C.A. No. 3:02-CV-1738 MRK

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants McDonald's Corporation, Timothy Michaud and Ronald Fedor[1] submit this Reply Memorandum in further support of their Motion for Summary Judgment. It is apparent from plaintiff's submissions that she has failed to dispute the material facts as presented by defendants, and that she indeed has embellished, and in some cases, directly contradicted, the facts that she testified to in her deposition and that she set forth in a July 2001 signed statement (Goulart Aff., Ex. J). Consequently, as set forth herein, Defendants' motion should be granted.

### Burford Failed To Dispute Defendants' Material Facts

Although Burford claims to have disputed the material facts as related by defendants in their Motion for Summary Judgment, she failed to do so.[2] A close

---

[1] Plaintiff has withdrawn her tort claims for sexual assault and intentional infliction of emotional distress, so that Carl Field is no longer a defendant in this action.
[2] Local Rule 56(a)(3) provides that:

reading of Burford's Statement of Disputed Facts confirms that there is no *genuine* dispute of material facts with respect to her allegations of sexual harassment. Burford does not set forth any contrary factual evidence, but rather simply disagrees with defendants' "characterization" of her allegations. Specifically, Burford does not dispute the material facts supporting defendants' contention that plaintiff's allegations do not rise to the level of a severe and pervasive hostile environment. Burford does not dispute the facts as related in Defendants' Local Rule 56(a)(1) Statement at ¶¶ 18-27, but puts forth the conclusory statement that "the Plaintiff denies the Defendants' characterization of Plaintiff's claims." Burford's Local Rule 56 (a)(2) Statement ("Statement"), Admissions and Denials, ¶¶ 18-21, 22-27. It is worthy of note, however, that plaintiff does not dispute that (1) she gave notice in May 2001, after experiencing what she alleges was sexual harassment, and that the alleged sexual harassment was not a motivating factor for her giving notice,[3] (2) certain incidents occurred after she gave notice, that she

---

Each denial in an Opponent's Local Rule 56(a)(2) Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.

Moreover, in accordance with Federal Rule of Civil Procedure 56(e):

An adverse party may not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or otherwise provided in this Rule must set forth specific facts showing that there is a genuine issue for trial.

Burford failed to comply with these standards of proof in her Local Rule 56(a)(2) Statement ("Burford's Statement"). Shoaf v. Matteo, 100 F. Supp. 2d 114, 117 (D. Conn. 2000) (where "the Plaintiff's submissions, . . . merely disagrees with part of the Defendant's Local 56(a) Statement and does not cite any evidence, it does not create genuine issues of material fact. . . and the facts set forth in the Defendant's Rule 56(a) Statement will be properly deemed admitted.")

[3] Burford stated in her July 2001 statement, Goulart Aff., Ex. J, that "[M]y problems with Carl began after I gave my two weeks notice." That contemporaneous statement only included one allegation

2

claim constituted sexual harassment, and (3) those incidents occurred between May 28, 2001 and June 11, 2001, and that she and Field overlapped in the store only for 15.5 hours during that period. Id. Therefore, the material facts set forth in paragraphs 18 through 27 of Defendants' Statement should be deemed admitted.

### Plaintiff Has Embellished and Contradicted Her Own Testimony

Plaintiff has improperly embellished her deposition testimony and the statement that she gave to McDonald's in July 2001.[4] For example, she now alleges that Field: (1) stared at her; (2) called her honey; (3) poked her and bumped into her, and (4) said "mmmm" in an allegedly sexual manner. Burford Statement, Disputed Facts, ¶¶21, 22, 24, 25, 26. She did not testify as to that behavior in her deposition, despite the fact that she was asked repeatedly to list each and every instance of sexual harassment. Burford Deposition, pp. 88, 98, a copy of which is attached hereto as Exhibit A. In any event, these allegations are far too vague and insignificant to amount to severe and pervasive sexual harassment. Casiano v. AT&T Corp., 213 F.3d 278, 284 (5th Cir. 2000)(calling an employee "honey" without egregious sexual misconduct does not constitute sexual harassment) Phillips v. Merchants Ins. Group, 3 F. Supp.2d 204, 208 (N.D.N.Y. 1998)(a supervisor calling

---

that Field commented on plaintiff's "ass," one shoulder rubbing incident, the Memorial Day "red hair" incident, one allegation of Field saying that he wanted to look down plaintiff's shirt, and allegations of use of foul language.

[4] This tactic is impermissible and should be rejected by the Court. See Raskin v. Wyatt Co., 125 F. 3d 55, 63 (2nd Cir. 1997) (applying the rule in this circuit that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); Dawson v. Bumble & Bumble, 246 F. Supp. 2d 301, 307 (S.D.N.Y 2003) (rejecting Plaintiff's attempt to "supplement or amend her deposition, so as to contradict or to put a different gloss on particular testimony she gave under oath in the presence of her counsel" to avoid summary judgment).

3

an employee "little boy" and "dumb man," and saying that she did not care if he had to "dance naked in the snow" to get business was not sexual harassment).

In addition, plaintiff has dramatically expanded upon another allegation that she made at her deposition. She did previously testify that, after June 11, 2001 when Michaud returned to the Groton store, Michaud and Field stated words in her presence to the effect of "Oops, I can't do that, that's sexual harassment." Exhibit A, pp. 99-101. She now maintains that, after June 11, 2001, Michaud and Field jokingly made such comments to each other 5-10 times daily during the period from June 11, 2001 until July 20, 2001, and that the comments were made between the time that Field and Michaud arrived at the store (9 a.m. or 10 a.m.), and the time that Burford left (1:30 p.m. or 2:00 p.m.).[5] Similarly, plaintiff previously testified that, when she worked at the Waterford store (July 21, 2001 until August 20, 2001), "Carl had come in there on several occasions to borrow food, and would make faces." Exhibit A, p. 144. Now she claims that Field came to that store on three occasions and said "Oh you again. I better not say that. That will get me into trouble again." Burford Statement, Disputed Issues, ¶15.

First, plaintiff's most recent characterization of those comments contradicts her deposition testimony. When asked at her deposition about Field's and Michaud's behavior after Michaud returned to the store on June 11, 2001, she

---

[5] A review of the Daily Crew Schedule Reports for the period June 11 – July 20, 2001 (excluding Saturdays and Sundays which plaintiff did not work) reveals that during that period plaintiff worked in the store along with Field and Michaud for only 20 hours over a total of five days. See Supplemental Affidavit of Carl Field, attached hereto as Exhibit B. (Defendants could not locate the schedules for June 25, and July 4, 5, and 6). In addition, Burford admitted ¶33 of Defendants' Local Rule 56 Statement, that Field was transferred to the Niantic store effective July 15, 2001. Therefore, even assuming that this behavior occurred, it could not have occurred on a daily basis as implied by plaintiff.

4

stated that Field and Michaud "would make jokes about me." Exhibit A, p.100. She then related what appeared to be two incidents of joking, including one where Field said "Oops, I can't do that, that's sexual harassment." She summarized the allegedly harassing behavior of Michaud and Field after June 11 as:

> Just those rude comments. They were not very friendly to me. I don't know, they made me feel not welcome. If I made one mistake they were very hard on me. It was stuff like that.

Exhibit A, p. 101. Having minimized the importance of those incidents, Plaintiff should not be permitted to expand upon them in an attempt to salvage her claims.

Moreover, these alleged statements do not support a claim for hostile environment sexual harassment. In Morris v. Oldham County Fiscal Court, 201 F.3d 784 (6th Cir. 2000), plaintiff complained of harassment by a supervisor and was transferred as a result. She alleged that post-transfer behavior by the alleged harasser, including giving plaintiff the "cold shoulder," being "overly critical of her work," 15 visits to her new work area, 30 telephone calls, "making faces" and giving her "the finger," constituted instances of sexual harassment. The Court disagreed.

> Plaintiff argues that we should include Likins's alleged "retaliatory conduct" ... into the hostile working environment equation. To do so would be a mistake, as Morris does not claim that Likins acted this way "because of sex." ... Rather, it seems to have been motivated entirely by his personal displeasure toward plaintiff and the complaints she made to Black [the county judge and Likins's superior]. As we recently observed, "[P]ersonal conflict does not equate with discriminatory animus." (Citation omitted).

Id. at 787. Plaintiff here complains that, after June 11, Field and Michaud made "rude comments" with no sexual content or implication, were not friendly to her,

5

and were "very hard" on her when she made a mistake. It is well settled that such teasing, overbearing comments, rudeness, and the like do not support a claim for sexual harassment. See, e.g., Dawson v. Bumble & Bumble, 246 F. Supp. 2d 301, 327-29 (S.D.N.Y. 2003); Carrasco v. Lenox Hill Hospital, 2000 WL 520640 (S.D.N.Y.); Phillips v. Merchants Ins. Group, 3 F. Supp.2d 204, 208 (N.D.N.Y. 1998).

Plaintiff also attempts to discount the significance of the statement summarizing her allegations of sexual harassment that she signed in July 2001 in a meeting with McDonald's HR representative Steve Goulart. That contemporaneous statement only included one allegation that Field commented on plaintiff's "ass," one shoulder rubbing incident, the Memorial Day "red hair" incident, one allegation of Field saying that he wanted to look down plaintiff's shirt, and allegations of use of foul language. Plaintiff now states that she did not read the statement, that Goulart "simply told her to sign it," and that Goulart did not include all her complaints. Burford Statement, Disputed Issues, ¶51. However, in her deposition, she stated that she did not read the statement before signing because "I watched him write while we were talking. So he told me that everything that I had said was in there, so I took him for his word." Exhibit A, p. 83. She did not testify that he instructed her not to read it. She also testified that Goulart told her at their meeting "to start from the very beginning of when stuff started happening in the store. ... Mostly he just kept asking me over and over certain things that I had seen, things that had been done to me." Exhibit A, pp. 128-30. Under Connecticut law, a party cannot avoid a document she has signed on the ground that she did not read

it. Ursini v. Goldman, 118 Conn. 554, 562 (1934). Burford should not be permitted now to add allegations to a contemporaneous statement based on a self-serving allegation that she failed to read the statement before signing.

With respect to the position of second assistant manager, plaintiff now states for the first time that she "was specifically told that Tim Meredith was given that specific position instead of her." Burford Statement, Disputed Issues, ¶39. The statement is supported only by a similarly conclusory statement in her Affidavit, and so should be disregarded.

Finally, Burford for the first time claims that her transfer to the Waterford store was involuntary: "Ron Fedor told Melissa Burford that the transfer was because Tim Michaud did not want her in the store anymore." Burford Statement, Disputed Issues, ¶39, citing Burford's Affidavit at ¶11.[6] This is a direct contradiction of her deposition testimony, in which she stated that "I had asked to be transferred to either that store [Waterford] or two other stores." Exhibit A, p. 125. The foregoing demonstrates that plaintiff has improperly attempted to salvage her claims by improving upon her previous testimony.

**Burford's Reliance on the Testimony of Others is Misplaced**

Additionally, Burford attempts to bolster her claims by citing the experiences of co-workers. Burford Statement, Disputed Issues, ¶¶16-19. Burford, however, has not shown that the experiences of her co-workers contributed to her alleged hostile work environment because (1) the allegations involve conduct that was not

---

[6] The Affidavit does not support the Statement, as Burford merely states in paragraph 11 that "I was transferred."

7

directed at her, and (2) she does not allege to have even been present when they were uttered. Thus, the comments have minimal importance. <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 112 (2nd Cir. 1997) (incidents directed at others or outside of plaintiff's presence are of limited probative value); <u>McPhaul v. Board of Commissioners</u>, 226 F.3d 558, 567 (7th Cir. 2000) (same). Moreover, the witnesses themselves downplayed these incidents. For example:

<u>Cassandra Kitchens</u> - Burford claims that, "according to witness Cassandra Kitchens, Carl Field was always touching, flirting and poking woman (sic)." Burford Statement, Disputed Issues, ¶ 17. Kitchens herself discounted these actions and described them as "playing" and "horsing around." Deposition of Cassandra Kitchens, at p. 11, a copy of which is attached as Exhibit C.

<u>Alma Toro</u> - Burford relies on Alma Toro's deposition for an allegation that Field talked "dirty" and intentionally misused the Spanish word for crotch. Burford Statement, Disputed Issues, ¶18. Toro testified, however, that she heard Field talk "dirty" only once, Deposition of Alma Toro, at p. 46, a copy of which is attached as Exhibit D. With respect to the Spanish word, Toro testified that Field used certain words in the context of learning to speak Spanish with some Spanish-speaking employees at the store and that he never used the words in reference to a person. Exhibit D, pp. 17-19. Further, Toro stated that Field was "just practicing how to say the words. I don't think that would be. . . bad because he's not specifically telling somebody the word." Exhibit D, p. 19. Moreover, Burford complains that Field called her "honey." Burford Statement, ¶ 22. Toro dismissed Field's use of the

word: "I don't think of that as bad because he used to call me honey. He used to call me honey, sweetie, ....I didn't think of that as bad." Exhibit D, p. 12

Vernon Brown - Burford cites to the deposition of Vernon Brown to support her claim that Field made jokes about the appearance of female customers. Burford Statement, Disputed Issues, ¶19. However, Brown specifically described these jokes as "side comments," which were not likely to be heard by anyone except Brown. As Brown says that these comments were often "whispered to me" as opposed to yelled or spoken aloud, Deposition of Vernon Brown at pp. 13-14, a copy of which is attached as Exhibit E, they cannot support plaintiff's claim.

Elcheva Waters - Burford also relies on the deposition testimony of Elcheva Waters, a former McDonald's employee. Burford Statement, Disputed Issues, ¶16. Burford neglects, however, to inform the Court that Waters worked at a different McDonald's store with Field, and never complained to anyone at McDonald's about Field's alleged behavior. Deposition of Elcheva Waters, pp. 8, 12, a copy of which is attached as Exhibit F. That testimony cannot speak to the environment in the store where Burford worked, and Waters never put McDonald's on notice regarding Field's behavior. Therefore, it should be excluded under Rule 404(b) of the Federal Rules of Evidence. Wilson v. Muckala, 303 F.3d 1207, 1217 (10th Cir. 2002)(evidence of prior sexual harassment inadmissible because it occurred at different location and employer did not receive notice); Wills v. Brown University, 184 F.3d 20, 28 (1st Cir. 1999)(evidence of prior sexual harassment inadmissible where employer did not receive notice).

9

### Burford Failed To Support Her Negligent Supervision Claim

With respect to Burford's claim for negligent supervision against Michaud, the Defendants have demonstrated that Field and Michaud were equals occupying the same position and that Michaud had no control over the terms and conditions of Field's employment, including his salary, hours, discipline, and promotions. Defendants' Statement, ¶ 13. In paragraph 55 of Burford's Statement Of Disputed Facts, she makes the conclusory statement, without factual support, that "Tim Michaud had authority to tell Carl Field to stop sexual harassment." Burford attempts to support this claim by citing to her own Affidavit at paragraph 13.

Burford, however, is not a competent witness to testify as to the relative authority of members within McDonald's management structure. Thus, according to Local Rule 56(a)(3), Burford has failed to support this purported dispute because her purported evidence would not be admissible at trial. On the other hand, Steve Goulart, a Human Resources representative from McDonald's corporation upon which the defendants rely is competent and qualified to testify as to McDonald's management structure. Burford has not and cannot dispute the fact that Michaud lacked the management authority necessary to be held liable for the tort of negligent supervision. Burford's claim, therefore, must be dismissed as against Michaud.

### CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their Motion for Summary Judgment in its entirety, along with such other relief as the Court deems just and proper.

DEFENDANTS, MCOPCO d/b/a
MCDONALD'S, TIMOTHY MICHAUD,
RONALD FEDOR,

By their attorneys,

*/s/ Neal J. McNamara*

Neal J. McNamara BBO No. 556329
Damon P. Hart BBO No. 644586
HOLLAND & KNIGHT LLP
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903
(401) 751-8500

Dated: January 2, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 2d day of January 2004, I served a copy of the foregoing **Reply Memorandum**, by first class mail to the following attorney of record:

Peter J. Bartinik, Jr., Esq.
Bartinik, Gianacoplos, Bates,
Brown & Grater, P.C.
Post Office Box 942
Groton, CT 06340

*/s/ Neal J. McNamara*

# 1484513_v1