UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
JUN 2  3 37 PM '04
U.S DISTRICT COURT
NEW HAVEN, CONN.

MELISSA BURFORD,

        Plaintiff,

v.

McDONALD'S CORPORATION,
CARL FIELD, TIMOTHY MICHAUD,
and RONALD FEDOR,

        Defendants.

NO: 3:02CV1738 (MRK)

## MEMORANDUM OF DECISION

This case arises from Plaintiff Melissa Burford's allegations of sexual harassment against Carl Field, her acting supervisor at McDonald's in 2001. For the reasons stated below, Defendants' Motion for Summary Judgment [doc. #41] is DENIED as to Plaintiff's First and Second Counts and as to Defendant McDonald's on Plaintiff's Fourth Count and GRANTED as to Defendants Michaud and Fedor on Plaintiff's Fourth Count.[1]

### I.

In light of the fact that, in the main, the Court is denying summary judgment, the Court will not go through the factual background of this case in great detail, except as needed to explain its rulings. The relevant background is as follows: Plaintiff worked at the McDonald's in

---

[1] Additionally, for the reasons stated on the record at oral argument, Defendants' Motion to Strike Statement of Material Facts [doc. #52] is DENIED, Plaintiff's Motion to Strike Reply to Response to Motion [doc. #54] is DENIED, and Plaintiff's Motion for Leave to File Sur-reply Brief [doc. #58] is GRANTED.

1

Groton, Connecticut from November 20, 2000 until she was transferred to the Waterford, Connecticut location on July 21, 2001. Def's Local Rule 56(a)1 Statement [doc. #43], ¶17, 41. Defendant Field was acting supervisor of the Groton location between April 2, 2001 and June 11, 2001. *Id.* ¶12, 21. Plaintiff alleges that Field sexually harassed her on numerous occasions, mostly in May and June, including, among other allegations, repeated incidents of sexual comments and physical contact. Pl's Local Rule 56(a)2 Statement [doc. #48], ¶II.1-28. Plaintiff also asserts that as a result of complaining about the harassment, she did not receive a promotion she had been promised. *Id.* ¶39. Plaintiff complained to the McDonald's service center and met with an investigator on July 18, 2001. *Id.* ¶51. She was transferred out of the Groton location on July 21, 2001. *Id.* ¶39.

Plaintiff has asserted claims for violations of Title VII and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-51 *et seq.*, against McDonald's for sexual harassment, a Title VII claim for retaliation against McDonald's, and state law claims for negligent training and supervision against McDonald's and two individual defendants, Mr. Michaud and Mr. Fedor, who worked at the Groton location.[2] All Defendants have moved for summary judgment on all counts [doc. #41].

## II.

### A.    Standard for Summary Judgment

---

[2]Plaintiff's Third Amended Complaint [doc. #40] includes a claim for intentional infliction of emotional distress and a claim for sexual assault, both against McDonald's and Defendant Field, but Plaintiff withdrew those counts in her Opposition to Summary Judgment [doc. #47] at 1. As Defendant Field is not named as a Defendant on any of the remaining counts, the case is dismissed as to Defendant Field.

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). The Second Circuit has cautioned that "in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995). That court has also emphasized that additional considerations apply when ruling on a motion for summary judgment in an employment discrimination case. "In discrimination cases where state of mind is at issue, we affirm a grant of summary judgment in favor of an employer sparingly because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (internal quotation omitted).

### B.     Title VII - Hostile Work Environment

Plaintiff has asserted that she was subjected to a hostile work environment in violation of the prohibition on discrimination on the basis of sex in the workplace set forth in Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e, *et seq.*[3] "[T]o prevail on a hostile work environment

---

[3] Connecticut courts have interpreted CFEPA to mirror the coverage of Title VII. *See, e.g., Brittell v. Dept. of Correction*, 247 Conn. 148, 164 (Conn. 1998) ("In defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60."). Therefore, this Court will not discuss CFEPA separately and the Court's discussion of and holding regarding Plaintiff's Title VII claims will apply equally to

claim, a plaintiff must demonstrate: '(1) that [the] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [the] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)). The Supreme Court has ruled that a work environment must be both subjectively and objectively hostile and abusive in order to establish a hostile environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). ("The conduct alleged must be severe and pervasive enough to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive.").

"A plaintiff alleging a hostile work environment 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment.' To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. Relevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) and *Harris*, 510 U.S. at 23).

The Second Circuit has recently cautioned the district courts considering hostile environment claims. *See Feingold v. State of New York*, 2004 U.S. App. LEXIS 8543, *23-*24

---

Plaintiff's claims under CFEPA.

(2d Cir. Apr. 30, 2004); *Terry v. Ashcroft*, 336 F.3d 128, 147-50 (2d Cir. 2003). The Second Circuit explained that "[w]hile the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that 'while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.' The environment need not be unendurable or intolerable. Nor must the victim's psychological well-being be damaged. In short, 'the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.'" *Id.* at 148 (quoting *Whidbee v. Garzarelli Food Specialties*, Inc., 223 F.3d 62, 70 (2d Cir. 2000)).

With this admonition in mind, the Court concludes that Plaintiff has presented sufficient evidence to allow a trier of fact to conclude that she subjectively experienced the environment as hostile. *See Feingold*, 2004 U.S. App. LEXIS 8543, at *27 ("[O]n the evidence Feingold presented, a rational fact-finder could conclude that Feingold subjectively experienced a hostile work environment."). She testified at her deposition that the sexual harassment she claims to have been subjected to made it difficult for her to work at the store, that she wanted to leave work, and that the experience made her physically ill. *See* Burford Deposition, Pl's Local Rule 56(a)2 Statement [doc. #48], Ex. C., at 88, 128, 146. Therefore, Plaintiff has provided sufficient evidence at this stage of the proceeding to satisfy the subjective prong of the hostile work environment test.

McDonald's principal claim on its motion for summary judgment is that Plaintiff has not satisfied the objective portion of the test – that is, that even taking her allegations as true, they do

not rise to the level of a hostile work environment as the Supreme Court and the Second Circuit have defined it. In her deposition and pleadings, Plaintiff has alleged a long series of harassing acts by Field, including comments he made about Plaintiff's anatomy, insinuating comments about proposed sexual activity between Plaintiff and Field, unwanted physical contact by Field, and attempts by Field to look down Plaintiff's shirt. *See* Pl's Local Rule 56(a)2 Statement [doc. #48], ¶¶ II.6, 8, 10, 11, 20-27. Plaintiff testified that Field's sexual comments occurred almost every day that they were in the store together. Burford Deposition, Pl's Local Rule 56(a)2 Statement [doc. #48] at 86. Insofar as all disputed issues of fact must be viewed in the light most favorable to Plaintiff, *Tomka*, 66 F.3d at 1304, the Court accepts all these allegations as true and concludes that the harassment alleged by Plaintiff, if believed, could be sufficient to allow a jury to conclude that she was subjected to a hostile work environment as defined by the Supreme Court and the Second Circuit. That is, the Court concludes that Plaintiff has alleged, and provided evidence of, harassment "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Whidbee*, 223 F.3d at 70; *see also Dobrick v. General Dynamics Corp.*, 40 F. Supp. 2d 90, 99-100 (D. Conn. 1999) (finding plaintiff had established hostile work environment for purposes of summary judgment based on allegations of similar pervasiveness and severity).

McDonald's argues that the sexual harassment Plaintiff claims she was subjected to "does not rise to the level of severity and frequency sufficient to alter the terms and conditions of Burford's employment" and it cites a series of cases from the Second Circuit and the District of Connecticut that granted motions for summary judgment dismissing hostile environment claims. Mem. of Law in Supp. of Def's Mot. for Summ. J. [doc. #44] at 14-17. However, a number of the

cited cases allege conduct that was less pervasive or severe than that claimed here. *See, e.g., Brennan v. Metro. Opera Ass'n Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *Phillips v. Merchants Ins. Corp.*, 3 F. Supp. 2d 204, 206 (N.D.N.Y. 1998). Additionally, the recent cautions by the Second Circuit about "setting the bar too high" further suggest to this Court that, though Plaintiff's claims in this case are perhaps close to the bar, the behavior alleged is severe and pervasive enough to allow her to present those claims to a jury. *See Feingold*, 2004 U.S. App. LEXIS 8543, at *23-*24; *Terry*, 336 F.3d at 148.

Plaintiff thus advances to the second stage of the hostile environment analysis, at which she must demonstrate that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant*, 80 F.3d at 715. Following Supreme Court precedent, the Second Circuit has held that "[i]n contrast to allegations of harassment by co-workers or customers, employers are presumptively liable for all acts of harassment perpetrated by an employee's supervisor." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767 (2d Cir. 1998) (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). In this case, Field was Plaintiff's acting supervisor during the period in which she claims to have been harassed. As a consequence, McDonald's is presumptively liable for the harassment. Nevertheless, "the employer will avoid liability if it can plead and prove, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and promptly correct any sexual harassment by such a supervisor, and (2) the employee unreasonably failed to avail herself of any corrective or preventative opportunities provided by the employer or to avoid harm otherwise." *Quinn*, 159 F.3d at 767. McDonald's asserts that it did exercise reasonable care and that Plaintiff unreasonably failed to avail herself of corrective or

preventative opportunities provided by the employer. Mem. of Law in Supp. of Def's Mot. for Summ. J. [doc. #44] at 17.

The Court believes that Plaintiff has raised a material issue of fact as to the application of the affirmative defenses in this case. First, the affirmative defense is only available to McDonald's if Plaintiff suffered no tangible employment action. *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001). Here, Plaintiff claims she was denied a promotion she had been promised because of her complaints about the alleged harassment. If her allegations are true, the affirmative defense would not be available to McDonald's. *Id.* Second, assuming the affirmative defense were available, Plaintiff has asserted facts which, if believed, would demonstrate that her actions in availing herself of corrective or preventative opportunities were reasonable. For example, she has asserted that she complained about Field's harassing conduct to a number of employees at the store, including the supervisor, and that she called McDonald's help line five times before she received a response. Pl's Local Rule 56(a)2 Statement [doc. #48] Ex. C., at 97-98, 126. Again, if true, the jury could conclude that her actions constituted a reasonable attempt to take advantage of McDonald's corrective or preventative opportunities, thereby negating its affirmative defense. Because there are genuine issues of material fact on McDonald's affirmative defense, summary judgment on that defense is inappropriate.[4]

---

[4] Plaintiff has also asserted a negligent supervision claim against McDonald's (Count Four). McDonald's argues in response that Plaintiff has failed to allege that McDonald's had any duty to supervise Field, or to allege that McDonald's knew or should have known that Field had a propensity to harass female employees. Def's Mem. of Law [doc. #44] at 30. McDonald's further points out that it provided sexual harassment training to Field as it does to all of its managers. *Id.* Plaintiff has not expressly responded to these arguments in her opposition to the motion for summary judgment. However, given the Court's conclusion that there are triable issues of material fact regarding McDonald's affirmative defenses, the Court denies McDonald's motion

Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's hostile work environment claims under Title VII (Count Two) and the CFEPA (Count One).

### C.  Retaliation

Before attending to the substance of Plaintiff's retaliation claim under Title VII, the Court must first determine whether Plaintiff has adequately pleaded such a claim. Plaintiff's complaint does not plead retaliation as a separate count, though she does explicitly allege retaliation as part of her Title VII hostile work environment count. *See* Third Amend. Compl. [doc. #40] ¶33d ("The defendant retaliated against the plaintiff for complaining about sexual harassment, and for refusing to accept, tolerate, and live with sexual harassment."). McDonald's argues that it did not become aware that Plaintiff intended to assert a retaliation claim until around the time of oral argument, and that it was prejudiced by the late notice and did not have time to brief the retaliation issue. McDonald's urges the Court to strike the retaliation claim. *See* Def's Supp. Mem. of Law in Support of Mot. for Summ. J. [doc. #66] at 3.

The Court rejects McDonald's request to strike Plaintiff's retaliation claim. While Plaintiff's complaint would undoubtedly have been clearer had her hostile work environment and retaliation claims been pleaded in separate counts, it is clear from the face of the complaint that Plaintiff was alleging that she had been retaliated against for complaining about the alleged harassment and that this retaliation was an element of her Title VII claim. *See, e.g.*, Third Amend. Compl. [doc. #40] ¶¶23, 24, 30, 33d. There is also no question that in connection with

---

for summary judgment on the negligent supervision count. At trial, Plaintiff will have to prove that she suffered injury as a result of alleged harassment that occurred after McDonald's was put on notice of Field's propensity to engage in tortious conduct.

9

the summary judgment motions, Plaintiff submitted evidence in support of her retaliation claim. Therefore, the only potential ground for striking Plaintiff's retaliation claim is her failure to sever it out into a separate count. While that would undoubtedly have been the better practice, the Court does not believe that her failure to do so is a proper ground for striking the claim. As the Supreme Court has stated, all that is required of a Title VII complaint is that it "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" as required by Fed. Rule Civ. Proc. 8(a)(2). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Indeed, Rule 8(e)(1) expressly states that "[n]o technical forms of pleading . . . are required." Accordingly, Plaintiff will be permitted to pursue her retaliation claim.

In order to establish a *prima facie* case of retaliation, "a plaintiff must demonstrate that (1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (internal quotations omitted). The Court finds that Plaintiff has shown a *prima facie* case of retaliation. Plaintiff has submitted evidence that: (1) she complained about the harassment, an activity protected under Title VII; (2) her employer was aware of the complaint, insofar as Plaintiff made her complaint both to management of the Groton location and through McDonald's regular complaint channels; (3) she was denied a promised promotion, which if true would constitute adverse employment action; and (4) Plaintiff has asserted that the timing of the denial of the promotion and her complaints gives rise to an inference that the reason for the denial was because of her complaints. Pl's Local Rule 56(a)2 Statement [doc. #48], ¶¶30-39.

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer who must defeat a rebuttable presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment decision." *Byrnie*, 243 F.3d at 102. Like the plaintiff's burden on her *prima facie* case, the employer's burden of production is also not very demanding. *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999). If the employer offers a non-discriminatory explanation for the employment decision, the presumption raised by the *prima facie* case is rebutted and the factual inquiry "proceeds to a new level of specificity." *Fisher*, 114 F.3d at 1336. The plaintiff then bears the ultimate burden of establishing that the employer's proffered reasons are a pretext for discrimination. *Id.*

Here, McDonald's has articulated non-discriminatory reasons for its employment decision, but Plaintiff has raised disputed issues of material fact regarding the reasons she was not promoted. The Court must, therefore, leave this issue for the jury to decide. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court thus denies McDonald's motion for summary judgment on Plaintiff's retaliation claim under Title VII.

### D.  Negligent Supervision Claims Against Defendants Fedor and Michaud

Plaintiff has also sued Defendant Fedor, the District Manager in charge of the Groton location, and Defendant Michaud, the Store Manager of the Groton location, for negligent supervision of Field. Third Amend. Compl. [doc. #40], Fourth Count, ¶31. To prove a claim of negligent supervision under Connecticut law, "a plaintiff must plead and prove that he suffered

11

an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. A defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." *Abate v. Circuit-Wise, Inc.*, 130 F. Supp. 2d 341, 344 (D. Conn. 2001); *see also Karanda v. Pratt & Whitney Aircraft*, CV 98582025S, 1999 Conn. Super. LEXIS 1244 (Conn. Super. Ct. May 10, 1999). Defendants move for summary judgment on the basis that Plaintiff has not offered any evidence that Fedor or Michaud had any reason to believe that Field would commit the acts of which he is accused and that Michaud had no supervisory authority over Field as they occupied parallel positions. Def's Mem. of Law [doc. #42] at 7.

Plaintiff has not submitted evidence to support a negligent supervision claim against Michaud. It is undisputed that Michaud was on sabbatical from April 2001 through June 11, 2001, the period of the alleged harassment. Plaintiff's counsel acknowledged at oral argument that very little harassment occurred after Michaud returned to the store on June 11, 2001.[5] Michaud could hardly be faulted for failing to supervise Field while Michaud was on sabbatical. Insofar as Michaud had no duty to supervise Field while on sabbatical, there can be no claim for negligent supervision. *See Abate*, 130 F. Supp. 2d at 344. Additionally, Plaintiff specifically testified that when Michaud returned to the store, she told him about the harassment and Field's

---

[5] The only harassment of which Field is accused that occurred after June 11, 2001 is a series of comments to the effect that Field could not say something to Plaintiff because it would be sexual harassment. Pl's Local Rule 56(a)2 Statement [doc. #48], ¶15. Plaintiff's counsel acknowledged at oral argument that these comments alone could not be the basis for a hostile work environment claim, and the Court will thus decline the opportunity to hold Michaud liable for negligent supervision of behavior which itself occasions no liability.

12

harassing behavior immediately stopped. Pl's Local Rule 56(a)2 Statement [doc. #48] Ex. C., at 92. Because there are no genuine issues of material fact regarding Plaintiff's negligent supervision claim against Defendant Michaud and the undisputed facts will not support such a claim as a matter of law, the Court grants Defendant Michaud summary judgment on Plaintiff's negligent supervision claim (Count Four).

With regard to Fedor, Plaintiff testified at her deposition that she told him about the harassment sometime after Memorial Day, 2001, and that he told her to give it time because Michaud was coming back shortly and that everything would be fine once Michaud returned from sabbatical. Burford Dep., Pl's Local Rule 56(a)2 Statement [doc. #48] Ex. C., at 96-97. According to Plaintiff, Fedor also told her that he would tell Field to leave Plaintiff alone. *Id.* Based upon Plaintiff's own testimony, the Court concludes that Plaintiff cannot sustain a negligent supervision claim against Defendant Fedor. The evidence presented indicates that Fedor was on notice of Field's propensity to engage in the tortious conduct only from the time of Plaintiff's complaint to him sometime after Memorial Day. Plaintiff has not specified a single harassing incident that occurred after that date, nor has she presented evidence that Fedor failed to tell Field to leave her alone, as Fedor had promised. Plaintiff has thus failed to "plead and prove that [she] suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise." *Abate*, 130 F. Supp. 2d at 344. Because there are no genuine issues of material fact regarding Plaintiff's negligent supervision claim against Defendant Fedor and the undisputed facts will not support such a claim as a matter of law, the Court grants Defendant Fedor summary judgment on Plaintiff's negligent supervision claim (Count Four).

13

## III.

Defendants' Motion for Summary Judgment [doc. #41] is DENIED IN PART AND GRANTED IN PART. It is DENIED as to Plaintiff's First and Second Counts and Plaintiff's Fourth Count with regard to Defendant McDonald's and GRANTED as to Plaintiff's Fourth Count with regard to Defendants Fedor and Michaud. This case is thus dismissed as to Defendants Fedor and Michaud. After this ruling, remaining in the case are Plaintiff's hostile work environment counts against Defendant McDonald's under both Title VII and the CFEPA, Plaintiff's retaliation claim against McDonald's under Title VII, and Plaintiff's negligent supervision claim against McDonald's. The parties are directed to participate in a telephonic conference with the Court on **June 15, 2004** at 4:45 p.m. to set a schedule for the trial of this matter.

IT IS SO ORDERED.

Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: June 2, 2004.

14